## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL MEYERS, DAVID RUNDELLA, DAVID BOSEFSKI, SCOTT KERICO, MARC AMBROSE, LISA MACONE, JOHANNA CURLEY and JEFFREY DEPALMA | : : : : : : |
| Plaintiffs, | : : |
| v. | : : C. A. No. 10-212-MPT |
| MITCHELL HEFFERNAN and JAMES E. PEDRICK, | : : : |
| Defendants. | : : |

## MEMORANDUM ORDER

### I.    INTRODUCTION

On February 18, 2010, Michael Meyers ("Meyers"), David Rundella ("Rundella"),

David Bosefski ("Bosefski"), Scott Kerico ("Kerico"), Marc Ambrose ("Ambrose"), Lisa

Macone ("Macone"), Johanna Curley ("Curley"), and Jeffrey DePalma ("DePalma")

(collectively, "plaintiffs") filed suit in the United States District Court for the District of

New Jersey against Mitchell L. Heffernan ("Heffernan") and James E. Pedrick

("Pedrick") (collectively, "defendants") alleging defendants failed to pay plaintiffs earned

commissions in violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 *et*

*seq.* ("WPL") and the Sales Representatives' Rights Act, N.J.S.A. 2A:61A-1 *et seq.*

("SRA") and that defendants are also liable to plaintiffs under claims of quantum meruit

and unjust enrichment.[1]  Currently before the court is defendants' motion to dismiss the

plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## II.    BACKGROUND[3]

Defendants Heffernan and Pedrick were Chief Executive Officer and Executive

Vice President, respectively, of Mortgage Lenders Network USA, Inc. ("MLN").  MLN

was a full-service mortgage banking company doing business in the State of New

Jersey.  Plaintiffs worked for MLN as commissioned salespersons until on or about

February 2007.  Plaintiffs' job responsibilities included soliciting New Jersey State

licensed mortgage brokers to use the mortgage products proffered by MLN.  Each

plaintiff was assigned territories by MLN throughout New Jersey and worked within

those territories on a daily basis.  Plaintiffs were entitled to and received commissions

every time a mortgage broker closed a loan through MLN as a result of plaintiffs'

solicitations.

On February 5, 2007, MLN filed a voluntary petition for relief from its creditors

under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*, in the United

States Bankruptcy Court for the District of Delaware (the "MLN Bankruptcy Case").[4]

---

[1] D.I. 1 ("complaint").  Plaintiffs' complaint was docketed as 10-cv-862 (MLC)(TJB) in the District of New Jersey.

[2] D.I. 11 (Motion to Dismiss).  Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to the jurisdiction of the United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment in this action.

[3] Unless otherwise noted, the facts are taken from the complaint.

[4] 07–bk-10146-PJW.  The court may take judicial notice of documents from the docket of a bankruptcy proceeding in considering a motion to dismiss under Rule 12(b)(6).  *See Schafer v. Decision One Mortgage Corp.*, C.A. No. 05-5653, 2009 WL 1532048, at *3 (E.D. Pa. May 29, 2009) (stating that "a court may . . . take judicial notice of documents from a bankruptcy proceeding, and consider them on a motion to dismiss") (citing *Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000) ("Under Federal Rule of Evidence 201, we may take judicial notice at any stage of the proceeding of a fact not subject to reasonable dispute that is capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned.")).

2

Defendants aver that plaintiffs submitted their claims for the same alleged unpaid commissions and/or wages they seek in this case to the United States Bankruptcy Court by: (1) filing proof of claims in the MLN Bankruptcy Case and agreeing to MLN's Plan of Liquidation; and (2) proceeding as claimants in the Workers Adjustment and Retraining Act, 29 U.S.C. § 2101, *et seq.* (the "WARN Act") against MLN and litigating the action to settlement.[5]

On March 15, 2010, the New Jersey district court, *sua sponte*, issued an Opinion and Order transferring this matter to the United States District Court for the District of Delaware because: MLN "has petitioned for bankruptcy relief in the United States Bankruptcy Court for the District of Delaware"; "Heffernan and Pedrick filed appearances therein"; and "[t]he issues in the action before this Court appear to be intertwined with the bankruptcy proceedings in Delaware."[6] On March 26, 2010, plaintiffs filed a motion for reconsideration of the New Jersey court's decision to transfer their action to this court.[7] In that motion, plaintiffs requested reconsideration of the court's March 15, 2010 opinion on the grounds that the WPL imposes personal liability on managing officers of a corporation by deeming them employers, individually. Consequently, plaintiffs maintained that they were entitled to pursue an action against Heffernan and Pedrick individually, without regard to the MLN Bankruptcy Case.[8] On May 28, 2010, the New Jersey court denied plaintiffs' motion noting, *inter alia*: that

---

[5] D.I. 12 at 4-5 (citing D.I. 2611 & 2892, 07-bk-10146-PJW).
[6] D.I. 3 & 4, 10-cv-862 (MLC)(TJB) (March 15, 2010 Opinion and Order). The New Jersey court also noted that plaintiffs had failed to advise it of the bankruptcy proceedings in violation of Local Civil Rule 11.2. D.I. 3 at 3 n.1, 10-cv-862 (MLC)(TJB).
[7] D.I. 5, 10-cv-862 (MLC)(TJB).
[8] D.I. 8 at 1, 10-cv-862 (MLC)(TJB).

3

plaintiffs did not argue that their case was unrelated to the MLN Bankruptcy Case; that their only argument in support of their motion was that the WPL imposes personal liability; and that plaintiffs were aware of the MLN Bankruptcy Case, despite their failure to inform the court of that proceeding, and admitted they sought relief therein.[9]

## III.    DISCUSSION

### A.    Standard of Review

*Fed. R. Civ. P.* 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[10]  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[11]  A motion to dismiss may be granted only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[12]  While the court draws all reasonable factual inferences in the light most favorable to plaintiff, it rejects unsupported allegations, "bald assertions," and "legal conclusions."[13]

---

[9] D.I. 12, 10-cv-862 (MLC)(TJB).

[10] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[11] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[12] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *In re Burlington*, 114 F.3d at 1420).

[13] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (rejecting "unsupported conclusions and unwarranted inferences") (citations omitted); *see generally Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the .

4

To survive a motion to dismiss, plaintiffs' factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ."[14]  Plaintiffs are thus required to provide the grounds of their entitlement to relief beyond mere labels and conclusions.[15]  Although heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged.[16]  A claim has facial plausibility when a plaintiff pleads factual content sufficient for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[17]  Once stated adequately, a claim may be supported by showing any set of facts consistent with the allegations in the complaint.[18]  Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record when reviewing a motion to dismiss.[19]

## B.   Sufficiency of the Complaint

### 1.   Statute of Limitations

The complaint alleges that each plaintiff "worked for MLN as commissioned salespersons until on or about February 2007"[20] and that "[p]rior to February 2007, and continuing thereafter, MLN stopped paying Plaintiff[s] . . . earned commissions on loans

---

. . laws in ways that have not been alleged.").

[14] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[15] *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[16] *Twombly*, 550 U.S. at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

[17] *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

[18] *See Twombly*, 550 U.S. at 563 (citations omitted).

[19] *See, e.g, Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) (citations omitted).

[20] D.I. 1 at ¶ 22.

that MLN closed through mortgage lenders solicited by [plaintiffs]."[21]  They filed their

complaint approximately three years later on February 18, 2010.  Defendants contend

that each of plaintiffs' claims–under the WPL and the SRA; and for quantum meruit and

unjust enrichment–are governed by a two-year statute of limitations and are thus time-

barred.  Plaintiffs contend that their claims are timely as each claim is governed by a

six-year statute of limitations.

### A.    WPL and SRA

Plaintiffs allege violations of the WPL and SRA as a result of MLN's failure to pay

earned commissions on loans that MLN closed through mortgage lenders solicited by

the individual plaintiffs prior to February 2007 and thereafter.[22]  The WPL and SRA are

each silent on the applicable statute of limitations.  "When the Legislature creates a

statutory cause of action without including a limitations provision, a court will apply the

general limitations provision which governs that category of claim."[23]  "The

determination of what statute of limitations applies does not 'turn on the complaint-

specific legal theories that plaintiffs pled, but rather on the nature of the injuries

generally identified with the specific cause of action.'"[24]

Defendants contend that those claims are time barred for failure to bring an

action within two years of the accrual of the claims pursuant to the general statute of

---

[21] D.I. 1 at ¶ 30.

[22] D.I. 1, Counts I, II (Meyers v. Defendants); V, VI (Rundella v. Defendants); IX, X (Bosefski v. Defendants); XIII, XIV (Kerico v. Defendants); XVII, XVIII (Ambrose v. Defendants); XXI, XXII (Macone v. Defendants); XXV, XXVI (Curley v. Defendants); XXIX, XXX (DePalma v. Defendants).

[23] *Troise v. Extel Commc'ns, Inc.*, 345 N.J. Super. 231, 236, 784 A.2d 748 (N.J. Super. Ct. App. Div. 2001) (citing *McGrogan v. Till*, 167 N.J. 414, 420-24, 771 A.2d 1187 (N.J. 2001) and *Montells v. Haynes*, 133 N.J. 282, 291-95, 627 A.2d 654 (N.J. 1993)).

[24] *Troise*, 345 N.J. Super. at 236, 784 A.2d 748 (quoting *McGrogan*, 167 N.J. at 423, 771 A.2d 1187).

6

limitations for injury to the person codified in N.J.S.A. § 24:14-2(a).[25]  Plaintiffs maintain

that their claims are governed by the six-year limitation period provided by N.J.S.A.

2A:14-1[26] applicable to breach of contract and tortious injury other than injury to the

person.

Defendants first argue that the two-year statute of limitations should govern

claims under the WPL by pointing to that limitations period contained in New Jersey's

Wage and Hour Law.  Specifically, section 34:11-56a25.1 of the Wage and Hour Law,

which addresses claims for unpaid wages and/or commissions, recites:

> No claim for unpaid minimum wages, unpaid overtime compensation or
> other damages under this act shall be valid with respect to any claim
> which has arisen more than 2 years prior to the commencement of an
> action for the recovery thereof.

The *Troise* court rejected a similar argument.  There, the plaintiffs filed a private

cause of action for underpayment of the wages required by the Prevailing Wage Act,

N.J.S.A. 34:11-56.25 to -56.46.[27]  The Prevailing Wage Act is silent as to the applicable

limitations period for the filing of a private action.[28]  The trial court dismissed the

complaint as untimely for failure to file within two years after the plaintiffs' claims arose,

noting in its order of dismissal that "the court had 'relied upon the provisions of N.J.S.A.

---

[25] N.J.S.A. § 2A:14-2(a) provides, in relevant part:  "Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within 2 years next after the cause of any such action shall have accrued . . . ."

[26] N.J.S.A. § 2A:14-1 provides:  "Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued."

[27] *Troise*, 345 N.J. Super. at 233-34, 784 A.2d 748.

[28] *Id.* at 236, 784 A.2d 748.

34:11-56a25.1.'"[29]  The appeals court rejected the defendant's argument that, because

the Wage and Hour Law and the Prevailing Wages Act have similar purposes, the

explicit limitation period recited in the Wage and Hour Law should be read into the

Prevailing Wages Act.[30]  After an examination of the legislative history and language of

the Wage and Hour Law and Prevailing Wage Act, the appeals court stated "even

though the language of the two laws is similar in many respects, they are separate and

distinct legislative enactments."[31]  The appeals court also rejected the defendant's

argument that "because the Wage and Hour Law and Prevailing Wage Act are both

designed to protect employees' economic well-being, the laws must be read *in par[i]*

*materia.*"[32]  That rule "'is merely an aid to the interpretation of doubtful or ambiguous

statutes . . . . [It] is not invoked to engraft the terms of one statute into another merely

because the general subject matters of the two enactments are similar.'"[33]  The court

went on to comment that "where the Legislature has inserted a provision in only one of

two statutes that deal with closely related subject matter, it is reasonable to infer that

the failure to include that provision in the other statute was deliberate rather than

inadvertent."[34]

Likewise, here, the court declines to engraft the two-year statute of limitations

contained in the Wage and Hour Law into the WPL.

---

[29] *Id.* at 235, 784 A.2d 748.  The appeals court noted that the trial court did not issue any written or oral opinion explaining its reasons for concluding the two-year limitations period applied to the plaintiffs' claims. *Id.*, 784 A.2d 748.

[30] *Id.* at 239, 784 A.2d 748.

[31] *Id.* at 240, 784 A.2d 748.

[32] *Id.*, 784 A.2d 748.

[33] *Id.*, 784 A.2d 748 (quoting *International Brotherhood of Elec. Workers Local No. 1470 v. Gillen*, 174 N.J. Super. 329, 329-30, 419 A.2d 446 (N.J. Super. Ct. App. Div. 1980)).

[34] *Id.*, 784 A.2d 748 (citing *Smith v. Twp. of Hazlet*, 63 N.J. 523, 527, 309 A.2d 210 (N.J. 1973)).

8

Defendants also rely heavily on *Montells v. Haynes*[35] where the plaintiff brought

a sexual harassment action under N.J.S.A. 10:5-13, the Law Against Discrimination

("LAD").  Because the LAD is silent as to the statute of limitations for Superior Court

actions, the issue before the Supreme Court of New Jersey was "whether the six-year

general statute of limitations, N.J.S.A. 2A:14-1, or the two-year personal-injury statute,

N.J.S.A. 2A:14-2, should apply" and "whether a single statute of limitations should apply

to all LAD claims, no matter how characterized . . . ."[36]  That case arose from a sexual-

harassment claim brought by the plaintiff against her supervisor, her employer and its

parent company, and various company managers.[37]

In count one of her complaint, the plaintiff alleged sexual harassment that

created a hostile work environment in violation of the LAD.  The remaining counts

asserted common law claims for:  breach of covenant of good faith resulting in

constructive discharge; intentional infliction of emotional distress; negligent and

intentional interference with her future economic opportunity; creation of a hostile work

environment resulting in constructive discharge, and; negligent and intentional assault

and battery.  The common law claims were premised on the same facts as the LAD

claim and, for each, sought damages for the same injuries.[38]  In determining the proper

statute of limitations for all LAD claims, the court focused "on the nature of the injury,

not the underlying legal theory of the claim"[39] with the question being "whether injuries

---

[35] 133 N.J. 282, 627 A.2d 654 (N.J. 1993).

[36] *Montells*, 133 N.J. at 285, 627 A.2d 654 (footnotes omitted).

[37] *Id.*, 627 A.2d 654.

[38] *Id.* at 286-87, 627 A.2d 654.

[39] *Id.* at 291, 627 A.2d 654 (citing *Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 145, 305 A.2d 412 (N.J. 1973) and *Burns v. Bethlehem Steel Co.*, 20 N.J. 37, 45, 118 A.2d 544 (N.J. 1955)).

9

under LAD are more like an 'injury to the person' under N.J.S.A. 2A:14-2 or like injuries under N.J.S.A. 2A:14-1, specifically those arising from breach of contract or from 'any tortious injury to the rights of another not stated in sections 2A:14.2 . . . .'"[40] The court determined that the two-year statue of limitations for personal injury claims applied to LAD claims.[41] As part of its discussion for the reasons it reached that conclusion, the court stated that "[a]lthough LAD . . . vindicates economic rights and some rights that sound in contract, the statute strikes directly at conduct that injures the personhood of another. A discrimination claim cuts most deeply at the personal level."[42]

The court disagrees with defendants' contention that "[a]s pleaded by the Plaintiffs' Complaint, each of the Plaintiffs asserts individual counts making allegations that are primarily personal in nature to each Plaintiff, individually, injuring his/her personhood . . . ."[43] As an example, plaintiff Myers' individual claims in Counts I-IV allege:

a.      He seeks "commissions earned and due him";

b.      He seeks "all unpaid commissions and all monies due and owing to him";

c.      "MLN stopped paying plaintiff Meyers earned commissions on loans that MLN closed"; and

d.      "Plaintiff Meyers' commissions were compensation accrued by plaintiff Meyers."[44]

---

[40] *Id.* at 291, 627 A.2d 654. The court noted that "in separating 'injury to the person' from 'tortious injury to the rights of another,' the Legislature essentially distinguished personal injuries involving physical or emotional harm from those involving economic harm. Accordingly, courts have viewed 'tortious injury to the rights of another' as applying primarily to actions for economic loss." *Id.,* 627 A.2d 654.

[41] *Id.,* 627 A.2d 654.

[42] *Id.* at 660.

[43] D.I. 12 at 8.

[44] D.I. 1 at ¶¶ 32, 33, 38, 40. Each of the plaintiffs made parallel allegations in their individual counts.

Contrary to defendants' assertion, that "each of the Plaintiffs' claims strike directly at conduct that injured their individual 'personhood,'" the court finds that "the nature of the injury" sought to be redressed by the claims are economic and not "conduct that injures the personhood" of the plaintiffs. Consequently, the six-year statute of limitations of N.J.S.A. § 2A:14-1 applies to plaintiffs' claims under the WPL and SRA. Defendants' motion to dismiss those claims as barred by the statute of limitations is, therefore, denied.

### B. Quantum Meruit and Unjust Enrichment

Each plaintiff asserts common law claims against defendants for quantum meruit and unjust enrichment.[45] Defendants once again rely on *Montells* in support of their contention that "[i]t is long-established legal precedent in the Supreme Court of New Jersey that common law claims are governed by a two-year statute of limitations."[46] The court finds no such blanket statement in *Montells*. On the page of *Montells* specifically cited by defendants, the court, in recounting part of the procedural history of the case, stated the Appellate Division affirmed the trial court's grant of summary judgment based on its conclusion that "the common-law actions were barred by the two-year statute."[47] As discussed above, the common-law claims asserted by the plaintiff in *Montells* related to her sexual harassment claim under the LAD. The *Montells* court determined that the common law claims arising from the alleged sexual harassment suffered by that plaintiff were injuries to her personhood and, thus, subject

---

[45] *See* D.I. 1, Counts III, IV (Meyers v. Defendants); VII, VIII (Rundella v. Defendants); XI, XII (Bosefski v. Defendants); XV, XVI (Kerico v. Defendants); XIX, XX (Ambrose v. Defendants); XXIII, XXIV (Macone v. Defendants); XXVII, XXVIII (Curley v. Defendants); XXXI, XXXII (DePalma v. Defendants).

[46] D.I. 12 at 12 (citing *Montells*, 133 N.J. at 288, 627 A.2d 654).

[47] *Montells*, 133 N.J. at 288, 627 A.2d 654.

11

to the two-year statue of limitations recited in N.J.S.A. § 2A:14-2(a).  That determination does not support defendants' contention that all common law claims are governed by a two-year statute of limitations under New Jersey law.  To the contrary, courts determining the proper statute of limitations for quantum meruit and unjust enrichment claims in New Jersey have frequently held that the six-year statute of limitations of N.J.S.A. § 2A:-14-1 applies to those claims.[48]

Because plaintiffs' quantum meruit and unjust enrichment claims were brought within six years after their causes of action accrued, defendants' motion to dismiss those claims as time-barred is denied.

## 2.   Entire Controversy Doctrine

Defendants contend that because plaintiffs all entered an appearance in the MLN Bankruptcy Case seeking to recover the same commissions and/or wages they seek from defendants in this action as WARN Act claimants, plaintiffs' complaint is barred under New Jersey's entire controversy doctrine.

The entire controversy doctrine is codified under Rule 4:30A of the New Jersey

---

[48] *See, e.g., Baer v. Chase*, 392 F.3d 609, 621-22 (3d Cir. 2004) (applying six-year statute of limitations to quantum meruit claims) (quoting N.J.S.A. § 2a:14-1 and citing *Kopin v. Orange Prods., Inc.*, 297 N. J. Super. 353, 688 A.2d 130, 140-41 (N.J. Super. Ct. App. Div. 1997)); *In re NorVergence, Inc.*, 424 B.R. 663, 682 (Bkrtcy. D.N.J. 2010) (statute of limitations for unjust enrichment claim is six years) (citing N.J.S.A. 2A:14-1); *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 473 (D.N.J. 1999) ("The statute of limitations in New Jersey for claims sounding in restitution/unjust enrichment or quantum meruit is six years.") (citing N.J.S.A. § 2A:14-1); *Kopin v. Orange Prods., Inc.*, 297 N.J. Super. 353, 688 A.2d 130, 140-41 (N.J. Super. Ct. App. Div. 1997) (stating that the statute of limitations applicable to plaintiff's "*quantum meruit* claim based on an express promise by an employer to his or her employee to provide compensation for business" was the six-year statute of limitations recited in N.J.S.A. 2A:14-1); *Labeau v. Rentzis*, C.A. No. 08-6300, 2010 WL 2521764, at *2 (D.N.J. June 14, 2010) ("Under New Jersey law, the statute of limitations for Plaintiff's . . . quasi-contract [unjust enrichment claim] . . . is six years.") (citing N.J.S.A. § 2A:14-1); *Jacobson v. Celgene Corp.*, 2010 WL 1492869, at *3 (D.N.J. Apr. 14, 2010) (unjust enrichment claims sound in quasi-contract and are subject to a six-year statute of limitations) (citing N.J.S.A. § 2A:14-1); *Lutzky v. Deutsche Bank National Trust Co.*, C.A. No. 09-03886 (JAP), 2009 WL 3584330, at *3, *5 (D.N.J. Jan. 27, 2009) (citing *Montells* for two-year statute of limitations for LAD claims, but six years for unjust enrichment (citing N.J.S.A. § 2A:14-1)).

Rules of Civil Procedure, which provides that "[n]on-joinder of claims or parties required

to be joined by the entire controversy doctrine shall result in the preclusion of the

omitted claims to the extent required by the entire controversy doctrine." The doctrine

"seeks to assure that all aspects of a legal dispute occur in a single lawsuit."[49]

In *Fields v. Thompson Printing Co., Inc.*, the United States Court of Appeals for

the Third Circuit noted that the entire controversy doctrine is:

> essentially a rule of mandatory joinder of claims and parties, which
> precludes non-joined claims from being brought at a later date. We have
> characterized it as "New Jersey's specific, and idiosyncratic, application of
> traditional res judicata principles." *Rycoline Prods., Inc. v. C&W
> Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Over the years, New Jersey
> courts have extended the doctrine to related claims, defenses,
> counterclaims and cross-claims. See *Massari v. Einsiedler*, 6 N.J. 303, 78
> A.2d 572 (1951) (defenses); *Ajamian v. Schlanger*, 14 N.J. 483, 103 A.2d
> 9 (1954), *cert. denied*, 348 U.S. 835. 99 L. Ed. 659 (1954) (related
> claims); *Vacca v. Stika*, 21 N.J. 471, 122 A.2d 619 (1956) (counterclaims).
> Thus, the doctrine applies to "virtually all causes, claims and defenses
> relating to a controversy between the parties engaging in litigation.
> *Cogdell v. Hospital Center*, 116 N.J. 7, 560 A.2d 1169, 1173 (1989).
>
> The New Jersey Supreme Court has stated that "in determining whether
> successive claims constitute one controversy for purposes of the doctrine,
> the central consideration is whether the claims . . . arise from related facts
> or the same transaction or series of transactions." *DiTrolio v. Antiles*, 142
> N.J. 253, 662 A.2d 494, 502 (1995). . . . "[T]he issue is, basically, whether
> a sufficient commonality of facts undergirds each set of claims to
> constitute essentially a single controversy that should be the subject of
> only one litigation". *DiTrolio*, 662 A.2d at 497.[50]

The entire controversy doctrine has been held to apply where the claims in a

successive action require a duplication of proof or evidence.[51] "The entire controversy

---

[49] *Olds v. Donnelly*, 150 N.J. 424, 431, 696 A.2d 633 (N.J. 1997) (citing *DiTrolio v. Antiles*, 142
N.J. 253, 267, 663 A.2d 494 (1995) and *Prevratil v. Mohr*, 145 N.J. 180, 187, 678 A.2d 243 (1996)).

[50] 363 F.3d 259, 265-66 (3d Cir. 2004) (first omission in original).

[51] *Fields*, 363 F.3d at 266.

doctrine serves three fundamental purposes: '(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.'"[52]

Additionally, "[i]n order for the entire controversy doctrine to apply, there must be 'equality of forum, that is, the first forum must have been able to provide all parties with the same full and fair opportunity to litigate the issues and with the same remedial opportunities as the second forum.'"[53] The entire controversy doctrine is an equitable doctrine, "its application is flexible, with a case-by-case appreciation for fairness to the parties."[54]

Defendants contend that the complaint should be dismissed under the entire controversy doctrine because: (1) New Jersey law applies to plaintiffs' claims;[55] (2) Heffernan and Pedrick entered their appearances in the MLN Bankruptcy Case;[56] (3) plaintiffs entered their appearances and submitted to the jurisdiction of the Bankruptcy Court in the MLN Bankruptcy Case by filing proof of claims and participating in the WARN Act Settlement;[57] (4) plaintiffs' claims before this court are for unpaid commissions and/or wages they allege were earned while working for MLN and for

---

[52] *Colemen v. Chase Home Fin., LLC*, Civ. No. 08-2215 (NLH)(JS), 2009 WL 3806417, at *4 (D.N.J. Nov. 10, 2009) (quoting *DiTrolio*, 142 N.J. at 267, 662 A.2d 494).
[53] *Todaro v. Twp. of Union*, 27 F. Supp. 2d 517, 532 (D.N.J. 1998) (quoting *Hernandez v. Region Nine Housing Corp.*, 146 N.J. 645, 661, 684 A.2d 1385 (1996)).
[54] *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999).
[55] D.I. 1 at ¶ 1.
[56] D.I. 3 at 1, 10-cv-862 (MLC)(TJB) (March 15, 2010 Opinion of the New Jersey District Court) (noting that MLN petitioned for bankruptcy relief in the United States Bankruptcy Court for the District of Delaware (*In re: Mortgage Lenders Network USA, Inc.*, Bankr. D. Del. No. 07-10146 (PJW)) and that Heffernan and Pedrick filed appearances therein).
[57] D.I. 2611 & 2892, 07-bk-10146-PJW.

which MLN did not pay them; (5) plaintiffs specifically claim that MLN violated the New Jersey Wage Payment Law, which is at issue in the case at bar; (6) plaintiffs seek from Heffernan and Pedrick "all unpaid commissions and all monies due and owing to" each of them from MLN; and (7) plaintiffs carry the burden of proof on the claims asserted in the instant matter and will have to prove: (a) they closed loans with MLN; (b) they earned commissions and/or wages from the loans closed with MLN; and (c) MLN failed to pay the earned commissions and/or wages.[58]

Based on those facts and plaintiffs' allegations in this case, defendants maintain that there is a commonality in the facts presented here and in the MLN Bankruptcy Case for unpaid commissions and/or wages. Defendants note that the claims arise from the same facts or occurrence–the MLN Bankruptcy Case and the unpaid commissions and/or wages which may have resulted therefrom. Consequently, defendants urge the court to dismiss the complaint under the New Jersey entire controversy doctrine.

Plaintiffs do not argue that the instant complaint lacks "commonality of facts" with the claims in the MLN Bankruptcy Case and acknowledge that defendants are parties to that proceeding and plaintiffs have entered appearances there. Instead, they argue that the entire controversy doctrine is inapplicable because the Delaware Bankruptcy Court is not an equal forum in which they may litigate their claims and that they have an independent and separate cause of action against defendants.

Plaintiffs acknowledge filing their initial claims for commissions and/or wages in

---

[58] All claims referenced are found in D.I. 1 at ¶¶ 28-33

the MLN Bankruptcy Case, but note that pursuant to Title 11, Section 507(a)(4) of the United States Bankruptcy Code, an employee's claim for wages earned within 180 days before the bankruptcy petition is filed, is granted priority, but only up to $10,000. Plaintiffs state that none of them received more than $10,000 in unpaid wages and allege that each are owed far more than that amount. As a consequence, plaintiffs maintain that the Bankruptcy Court is not an equal forum in which they may litigate their claims. Plaintiffs state that the Bankruptcy Court has no authority to issue an order against defendants personally, because defendants did not file for personal protection from the Bankruptcy Court. As such, plaintiffs contend that they are unable to litigate their claims against defendants in the Bankruptcy Court, again demonstrating that the Bankruptcy Court is not an equal forum for their claims.

Finally, plaintiffs also note that while defendants are parties to the proceedings in the Delaware Bankruptcy Court, they did not file for individual bankruptcy. They contend that defendants are simply assisting MLN in its efforts to reorganize. Plaintiffs maintain, therefore, that a determination with regard to MLN will have no effect on the defendants, who face individual liability under the WPL. As such, plaintiffs argue they are not bound by the entire controversy doctrine because they have an independent and separate cause of action against the defendants.

Defendants argue that the cases relied upon by plaintiffs for their "equality of forum" argument are inapposite to the instant litigation. In *Todaro v. Township of Union*, the court considered actions before the court and an administrative agency.[59]

_____

[59] 27 F. Supp. 2d 517, 531-32 (D.N.J. 1998).

The court determined that the plaintiffs' claims before it were not barred by the entire controversy doctrine because those claims had not yet accrued at the time of the original proceeding.[60]  In *Hernandez v. Region Nine Housing Corp.*, the plaintiff filed a charge for discrimination under Title VII of the Federal Civil Rights Act of 1964 before the United States Equal Employment Opportunity Commission ("EEOC") and later, in state court, filed a claim for discrimination in violation of New Jersey's Law Against Discrimination ("LAD") based on the same facts.[61]  The court determined that the entire controversy doctrine did not bar plaintiff's LAD claim because the EEOC administrative proceeding was not an equal forum to the state Superior Court.[62]

Defendants conclude that, "[i]n the case at bar, unlike the plaintiffs in *Todaro* and *Hernandez*, the plaintiffs' claims initially were brought before the United States Bankruptcy Court for the District of Delaware, and then in the United States District Court for the District of New Jersey."[63]  Other than distinguishing the respective cases cited by plaintiffs, however, defendants do not address the basic requirement enunciated in those cases that there must be an equality of forums for the entire controversy doctrine to apply, *i.e.*, "'the first forum . . . [has] been able to provide all parties with the same full and fair opportunity to litigate the issues and with the same

[60] *Id.* at 532; *id.* at 531-32 (reciting that "'[i]t is well recognized that the entire controversy doctrine does not bar claims which have not arisen or accrued during the pendency of the original action'") (quoting *McNally v. Providence Washington Ins. Co.*, 304 N.J. Super. 83, 94, 698 A.2d 543 (N.J. Super. Ct. App. Div. 1997)) (alteration in original).

[61] 146 N.J. 645, 650-51, 684 A.2d 1385 (N.J. 1996).

[62] *Id.* at 661, 684 A.2d 1385 ("[T]he informal and flexible nature of the EEOC administrative forum does not afford a complainant the ability to litigate a claim to the same extent that he or she would be able in the Superior Court.  Further, the EEOC cannot render a final, enforceable judgment.").

[63] D.I. 20 at 9.

17

remedial opportunities as the second forum.'"[64]  Defendants do not respond to the

bases of plaintiffs' argument that the Bankruptcy Court is not an equal forum to this

court:  that there is a statutory limit to the amount of recovery available to plaintiffs in

the MLN Bankruptcy Case; and that although defendants entered appearances in the

MLN Bankruptcy Case, because they did not file for personal bankruptcy, the

Bankruptcy Court does not have authority to issue an order against defendants

personally and any determination with regard to MLN will have no effect on defendants

(who face individual liability under the WPL).

Because it does not appear that plaintiffs' had the same full and fair opportunity

to litigate their claims with the same remedial opportunities in the MLN Bankruptcy

Case, the court finds that the MLN Bankruptcy Case did not present an equal forum to

this court.  Consequently, defendants' motion to dismiss based on the entire

controversy doctrine is denied.

### 3.    Individual Liability under the WPL

Defendants argue that, although "[i]t is well established under the [WPL] that an

employer is responsible for paying wages and/or commissions to its employees,"[65]

plaintiffs' WPL claim should be dismissed for failure to establish their individual liability

under that statute.  Defendants contend that, under the WPL, "imposition of personal

liability on corporate officers of a corporate employer is secondary to the liability of the

corporation/employer"[66] and that plaintiffs carry the burden to plead and prove that

---

[64] *Todaro*, 27 F. Supp. 2d at 532 (quoting *Hernandez*, 146 N.J. at 661, 684 A.2d 1385).

[65] D.I. 12 at 15 (citing *Mulford v. Computer Leasing, Inc.*, 334 N.J. Super. 385, 759 A.2d 887 (N.J. Super. Ct. Law Div. 1999)).

[66] *Id.* (citing *Mulford*, 334 N.J. Super. at 399, 759 A.2d 887)).

18

defendants should be held individually liable for commissions and/or wages not paid by MLN.[67]

The court first notes that the WPL explicitly states that "[f]or the purposes of this act the officers of a corporation and any agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation."[68] The *Mulford* case, cited by defendants, noted "the strong public and statutory policy of [New Jersey] in favor of protecting payment of employees' duly earned compensation" and affirmed that the WPL "imposes personal liability on the managing officers of a corporation . . . ."[69] Defendants correctly note that in *Mulford* the court concluded that the corporate-officer defendants' personal liability in that case was secondary to the corporate-entity defendant, however, the individual defendants were jointly and severally liable with the corporate-entity defendant should that entity fail to pay the judgment against it.[70]

Defendants rely on *Fields v. Thompson Printing Co., Inc.*[71] and *Hammer v. Computer Leasing, Inc.*[72] for the proposition that, under the WPL, corporate officers can only be held personally liable for the commissions and/or wages not paid by the corporate employer if a plaintiff alleges facts asserting that the corporate officers acted in bad faith and were not acting with the intent to benefit the corporation in refusing to

---

[67] *Id.* (citing *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 273 (3d Cir. 2004)).
[68] N.J.S.A. 34:11-4.1.
[69] *Mulford*, 334 N.J. Super. at 393, 759 A.2d 887.
[70] *Id.* at 399, 759 A.2d 887.
[71] 363 F.3d 259 (3d Cir. 2004).
[72] Docket Nos. A-2791-07T1, A-1893-08T1, 2009 WL 1686820 (N.J. Super. Ct. App. Div. June 18, 2009).

pay the plaintiff's due compensation.[73]

In *Fields*, a terminated employee brought suit against his former employer,

Thompson Printing Co., Inc. ("TPC"), and the company's CEO asserting a federal claim

under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et*

*seq.*, seeking reinstatement of his salary and benefits through claims for violation of the

WPL, breach of contract, unjust enrichment, conversion, quantum meruit, and breach of

the covenant of good faith and fair dealing. The plaintiff also asserted a minority

shareholder oppression claim under N.J.S.A. § 14A:12-C-7(1)(c).[74] The district court

granted the plaintiff's motion for summary judgment with regard to his ERISA, WPL,

breach of contract, unjust enrichment and quantum meruit claims, but denied the

motion with respect to the shareholder oppression claim.[75] The defendants appealed

arguing, *inter alia*, that the trial court erred in determining that the CEO was jointly and

severally liable with TPC.[76]

In considering the CEO's personal liability, the Third Circuit stated that it was the

plaintiff's burden to plead and prove a basis for the personal liability of that individual,[77]

but only discussed the plaintiff's ERISA and breach of contract claims.[78] The appeals

court first discussed the plaintiff's ERISA claim and found that the CEO could not be

---

[73] Each of these cases was a review of a trial court's decision on a motion for summary judgment.
[74] *Fields*, 363 F.3d at 263.
[75] *Id.* at 264.
[76] *Id.*
[77] *Id.* at 273-74; *id.* at 273 ("In order to be entitled to judgment against [the CEO], [the plaintiff] had to aver, and demonstrate he could prove, sufficient facts to support liability against [the CEO] under ERISA and under state law.").
[78] *Id.* at 274 (The Third Circuit stated that "[t]he pleadings allege generally that [the CEO] violated fiduciary duties owed to [the plaintiff] *under ERISA*, and that [the CEO and the company] *breached the Contract* by refusing to pay [the plaintiff] salary and benefits after [the plaintiff's] termination.") (emphasis added).

personally liable because of the particular type of post-employment benefits plan which covered the plaintiff.[79] Next, the appeals court considered the plaintiff's "breach of contract claim," and stated that "New Jersey law provides that 'an officer who causes his corporation to breach a contract for what he conceives to be in the best interest of the corporation does not thereby incur personal liability.'"[80] It was in the context of the plaintiff's breach of contract claim, then, that the appeals court stated "[the CEO] can be held personally liable only if [the plaintiff] alleges and proves that [the CEO] was not acting with the intent to benefit [the corporation] when he refused to pay [the plaintiff] the benefits and compensation that were due under the employment agreement."[81] The appeals court did not discuss personal liability under the WPL. Indeed, the opinion begins by stating that "[t]hese appeals come to us from the District court's order enforcing the language of *an employment contract* . . . ."[82]

    The court's analysis of personal liability in *Hammer* similarly discussed individual

---

[79] *Id.* The plaintiff's post-employment benefits plan was what is known as a "Top Hat" plan which "are not subject to ERISA's requirements for vesting and funding . . . and the administrators of [those] plans are not subject to ERISA's fiduciary requirements." The court, therefore, concluded that the CEO "did not have a fiduciary duty with respect to [the plaintiff's] 'Top Hat' plan" and could not be personally liable for any ERISA violation with respect to that plan. *Id.* (citation omitted).

[80] *Id.* (quoting *Zeiger v. Wilf*, 333 N.J. Super. 258, 284, 755 A.2d 608 (N.J. Super. Ct. App. Div. 2000)). The court notes that *Zeiger* involved a suit over an alleged breach of the plaintiff's consulting contract. The plaintiff there did not assert a WPL claim. Moreover, the case relied on in *Zeiger* for the test for determining whether an officer has acted in the best interest of the corporation referenced by *Fields*, was yet another contract case where the issue on appeal was "the scope of an agent's privilege to advise the principal *to breach a contract* where the agent's advice furthers the interests of that principal and the interests of another principal of the agent, as well." *Welch v. Bancorp Mgmt. Advisors, Inc.*, 675 P.2d 172, 174 (Or. 1983) (emphasis added).

[81] *Fields*, 363 F.3d at 274.

[82] *Id.* at 262 (emphasis added). The court also notes that the parties' briefing to the Third Circuit similarly did not discuss personal liability under the WPL. *See* 2003 WL 24191408, at *24-*26 (Defendants' Appellate Brief arguing against personal liability "[w]ith regard to the breach of contract action under New Jersey state law" and no personal liability with regard to the ERISA claim); 2003 WL 24191409, at *9-*12 (Plaintiff's Appellate Brief stating that "[the CEO's] bad faith in depriving [the plaintiff] of his benefits under the Employment Agreement subjects him to personal liability under state contract law and federal common law of unilateral contract").

21

liability with reference to breach of contract. The terminated employee in that case brought suit against his former company and certain of its officers alleging breach of an employment agreement, breach of the covenant of good faith and fair dealing, interference with contractual relationships, breach of an incentive stop option agreement, violation of the oppressed minority shareholder statute, N.J.S.A. § 14A:12-7, violation of the New Jersey Fair Credit Reporting Act ("FCRA"), N.J.S.A. 56:11-28 to -43, and violation of the WPL, N.J.S.A. 34:11-4.1 to -33.6.[83] The trial court granted summary judgment awarding the plaintiff the deferred compensation payable only by the corporate defendant.[84] The plaintiff argued on appeal that, pursuant to the WPL, the trial court should have awarded him judgment as to the individual named defendants in addition to the corporation. Rejecting his argument, however, the *Hammer* court cited *Fields* as support for the statement that "[s]o long as officers of a corporation believe that they are acting in its best interest, they do not incur personal liability for causing the corporation to *breach a contract*."[85] If an officer "acted within the scope of his or her authority and with the intent to benefit the corporation," the officer acted in the corporation's best interest and "is not liable to a third party for *contractual interference*" even when acting "with 'mixed motives' to benefit him or herself."[86]

Unlike the plaintiffs in *Fields* and *Hammer*, here the complaint does not contain a breach of contract claim, as plaintiffs emphasize in their opposition to defendants' motion stating that they:

---

[83] *Hammer*, 2009 WL 1686820, at *1.
[84] *Id.*
[85] *Id.* at *5 (citing *Fields*, 363 F.3d at 274) (emphasis added).
[86] *Id.* (citing *Fields*, 363 F.3d at 274) (emphasis added).

22

do not seek to hold the Defendants personally liable for a corporation[']s
failure to pay wages under a breach of contract theory, rather they seek to
hold Defendants personally liable for the corporation's failure to pay
wages under a statute which explicitly provides for the personal liability of
officers [of] the corporation.[87]

Additionally, in contrast to *Fields* and *Hammer*, the court in *Mulford* did not

discuss whether there were allegations and proof as to whether the individual

defendants were acting with the intent to benefit the corporation in holding there was

individual liability under the WPL.  There, the court determined that certain

commissions, compensation, or damages were due to the plaintiff from his former

corporate employer.[88]  Without reference to the motivations of corporate officers, the

court flatly stated that "[t]he New Jersey statute imposes personal liability on the

managing officers of a corporation by deeming them the employers of the employees of

the corporation."[89]  Noting that "[t]he act applies to 'wages', which means the direct

monetary compensation for services rendered by an employee where the amount is

determined, among others, on a 'commission basis,'" the court concluded that "the

statute is intended to allow a private right of action . . . for a violation thereof to the

employee against the employer and its managing officers for wages not paid as

provided therein."[90]  The court continued:

> Employees are the obvious special beneficiaries of the statute; and to
> allow the civil action will plainly further its purpose.  The statute thus
> impliedly confers on employees a private right of action in court against
> employers (as defined in N.J.S.A. 34:11-4.1) to protect and enforce their
> rights thereunder, as a remedy in addition to the penal and administrative
> sanctions and administrative wage collection proceedings, provided in

---

[87] D.I. 18 at 8.

[88] *Mulford*, 334 N.J. Super. 385, 393, 759 A.2d 887 (N.J. Super. Ct. Law Div. 1999).

[89] *Id.* at 393, 759 A.2d 887 (citing N.J.S.A. 34:11-4.1).

[90] *Id.* at 393-94, 759 A.2d 887.

23

other sections thereof.[91]

The court held that the individual defendants were personally liable to the plaintiff jointly and severally, along with the corporate defendant, with the individual defendants liability secondary to the corporate defendant and enforceable to the extent the corporate defendant did not pay the judgment within a specified time-period.[92]

The court in *Gibbs v. Massey*, a decision rendered several years after *Fields*, similarly did not discuss the intent behind the actions of an individual that the plaintiff sought to add as a defendant to her WPL claim.[93]  There, a terminated employee filed suit against her former employer and certain individuals alleging: violations of the New Jersey Law Against Discrimination, the Family and Medical Leave Act, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the WPL, conversion, intentional interference with contractual relations and/or prospective economic advantage, and "defamation/slander *per se* /injurious falsehood."[94]  The plaintiff then sought leave to amend her complaint to add additional claims and to add certain parties to previously-pled claims, including adding the president of her former employer as individually liable under her WPL claim.[95]  Like the *Mulford* court, the *Gibbs* court noted that under the WPL an "employer" includes "'the officers of a corporation and any agents having the management of such corporation'" and granted plaintiff's motion to amend her complaint to assert a WPL claim individually against the president

---

[91] *Id.* at 394, 759 A.2d 887.

[92] *Id.* at 398-99, 759 A.2d 887.

[93] Civ. A. No. 07-3604 (PGS), 2009 WL 838138 (D.N.J. Mar. 26, 2009).

[94] *Id.* at *2.

[95] *Id.* at *3, *6.  Plaintiff's original complaint only named her former company as defendant in her WPL claim. *See* D.I. 12 (Notice of motion to file amended complaint), Ex. A, Fifth Count (original complaint), 07-cv-03604-PGS-ES (D.N.J.).

of her former employer.[96]

The complaint alleges that Heffernan was the CEO of MLN and Pedrick was the Executive Vice President of the company and, therefore, as principal officers and agents having the management of MLN, defendants were employers of plaintiffs as defined by N.J.S.A. 34:11-4.1. Based on the language of N.J.S.A. 34:11-4.1 and analysis of the cases above, the court determines that a plaintiff need not plead a corporate officer was not acting with the intent to benefit his company in order to adequately assert a claim for individual liability under the WPL against such officer. Consequently, defendants' motion to dismiss the WPL claim for failure to establish defendants' potential personal liability is denied.

   4.    *Failure to State a Claim under the SRA*

Plaintiffs allege that they are "sales representative[s]" as defined by N.J.S.A. 2A:61A-1(c).[97] Defendants contend that plaintiffs fail to state a claim under the SRA because plaintiffs are not "sales representatives" as defined therein and, therefore, are not entitled to protection under that statute.

The SRA defines a "sales representative" as follows:

> "Sales Representative" means an independent sales company or other person, *other than an employee*, who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission but shall not include one who places orders or purchases exclusively for his own account for resale.[98]

Defendants state that the plain language of the SRA, therefore, excludes employees

---

[96] *Gibbs*, 2009 WL 838138, at *6 (quoting N.J.S.A. 34:11-4.1(a)).

[97] *See, e.g.*, D.I. 1 at ¶¶ 32, 62, 88.

[98] N.J.S.A. § 2A:61A-1(c) (emphasis added).

25

from the definition of "sales representatives" and applies only to independent sales
representatives and independent contractors.[99]

The complaint alleges that defendants were "employers" of each plaintiff as
principle officers and agents managing MLN,[100] and that each plaintiff was an
"employee" of MLN[101] who "worked for MLN as a commissioned salesperson."[102]
Defendants argue that, if the court were to accept all of plaintiffs' allegations as true,
they are not entitled to protection or damages under the SRA since plaintiffs set forth no
allegations that they were independent contractors or anything other than employees of
either MLN or Heffernan and Pedrick.[103]

Plaintiffs do not dispute defendants' contention that the SRA defines a "sales
representative" to exclude an "employee."  They argue that, at this early stage of
litigation, it has not been conclusively established that plaintiffs were employees of
defendants and contend, correctly, that under the Federal Rules of Civil Procedure,
they are entitled to plead alternative theories of liability.[104]

It is also worth noting that the allegations set forth in the complaint–that plaintiffs
are "employees"–which defendants ask the court to accept as true are set forth in
claims for violation of the WPL.  In the claims for violation of the SRA, each plaintiff

---

[99] D.I. 12 at 17 (citing *Kas Oriental Rugs, Inc. v. Ellman*, 394 N.J. Super. 278 (N.J. Super. Ct. App.
Div. 2007); *American Delta Technologies, Inc. v. RK Electronic Information Concepts*, 276 N.J. Super. 283
(N.J. Super. Ct. App. Div. 1994); and *Neal v. Eastern Controls, Inc.*, 2008 N.J. Super. Unpub. LEXIS 2668,
at *19 (N.J. Super. Ct. App. Div. 2008 )).

[100] D.I. 1 at ¶¶ 27, 53, 79, 105, 131, 157, 183, 209.  Each plaintiff alleged defendants were their
employers as defined by N.J.S.A. 34:11-4.1(a) of the WPL.

[101] D.I. 1 at ¶¶ 28-29, 54-55, 80-81, 106-107, 132-133, 158-159, 184-185, 210-211.  Each plaintiff
alleged they were employees of MLN as defined by N.J.S.A. 34:11-4.1(b) of the WPL.

[102] D.I. 1at ¶ 22 (recited in section titled "FACTS COMMON TO ALL COUNTS").

[103] Other than pointing to allegations in the complaint that plaintiffs were employees of MLN,
defendants do not challenge the sufficiency of plaintiffs' SRA claims.

[104] *See* FED. R. CIV. P. 8(d)(2) & (3).

alleges that they are a "sales representative" as defined by that statute.[105] It would
appear inconsistent, at this stage of the litigation, for the court to accept as true
plaintiffs' contentions that they were employees of MLN as defined by the WPL, but not
accept as true their alternative contentions that they were sales representatives as
defined by the SRA in support of the alleged violation of that statute. Accepting as true
plaintiffs' allegations that they were sales representative as defined by the SRA, they
necessarily have alleged that they were not employees but, rather, individuals entitled
to recovery under that statute. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a
short and plain statement of the claim showing that the pleader is entitled to relief,' in
order to 'give the defendant fair notice of what the . . . claim is and the grounds upon
which it rests.'"[106] The court determines that plaintiffs have met the requirements of
Rule 8(a)(2) and, therefore, defendants' motion to dismiss the counts alleging violation
of the SRA for failure to state a claim is denied.[107]

5.    *Failure to State a Claim for Quantum Meruit and Unjust Enrichment*

In addition to arguing that the statute of limitations bars plaintiffs' quasi-contract
theories of quantum meruit and unjust enrichment discussed above, defendants
separately argue those claims must be dismissed as those claims are not permitted to
be asserted when a contract is at issue. In *Van Orman v. American Ins. Co.*, the Third
Circuit stated that, under New Jersey law, "recovery under unjust enrichment may not

---

[105] D.I. 1 at ¶¶ 36, 62, 88, 114, 140, 166, 192, 218.
[106] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 335 U.S.
41, 47 (1957) (omission in *Twombly*).
[107] In light of the court's determination, defendants' request, pursuant to N.J.S.A. § 2A:61A-3, for
attorneys' fees and costs incurred in defending against plaintiffs' claims is also denied.

27

be had when a valid, unrescinded contract governs the rights of the parties."[108]

The complaint alleges that plaintiffs were entitled to commissions based on a

contract between plaintiffs and MLN, and that plaintiffs contracted with Heffernan and

Pedrick:

> Plaintiff . . . was a sales representative as defined by N.J.S.A. 2A:61A-
> 1(c), having contracted with Defendants, as principal officers and agents
> of MLN, to solicit orders for products and services in exchange for
> compensation in part by commission. Under the contract between Plaintiff
> . . . and MLN, Plaintiff . . . was entitled to and was paid commissions every
> time a mortgage broker solicited him by closed a loan through MLN.[109]

Defendants do not allege that plaintiffs failed to adequately plead their quantum meruit

and unjust enrichment claims, rather they contend that a plaintiff may not maintain

those equitable remedies while also bringing a breach of contract claim. In support of

this argument, defendants rely on *Tracy v. Filenet Corp.*[110] and *Oswell v. Morgan*

*Stanley Dean Witter & Co.*[111]

Unlike the procedural posture of this case, *Tracy* was a decision on a motion for

summary judgment. Granting summary judgment to the defendant on the plaintiff's

unjust enrichment claim, the court found that an unjust enrichment claim could not be

brought "when a valid, unrescinded contract governs the rights of the parties"[112] The

court stated that "*because it has already been determined* that valid, unrescinded

contracts existed between the parties, Tracy cannot maintain a claim for unjust

---

[108] 680 F.2d 301, 310 (3d Cir. 1982).
[109] D.I. 1, ¶¶ 36-37. Each plaintiff made parallel allegations. *See* D.I. 1 ¶¶ 62-63, 88-89, 114-115, 140-141, 166, 192, 218.
[110] Civ. A. No. 06-1962 (NLH), 2007 U.S. Dist. LEXIS 94754 (D.N.J. Dec. 28, 2007).
[111] Civ. No. 06-5814 (JBS), 2007 U.S. Dist. LEXIS 44315 (D.N.J. June 18, 2007).
[112] *Tracy*, 2007 U.S. Dist. LEXIS 94754, at *28. (citing *Van Orman v. American Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)).

28

enrichment, and summary judgment must be entered in favor of [defendant] on this claim."[113] Because no determination has been made as to any contract between plaintiffs and MLN in this case, *Tracy* is unpersuasive.

*Oswell*, however, was a case deciding a motion to dismiss. There, the court stated that "[r]ecovery for unjust enrichment . . . is an equitable remedy that is only available when there is no express contract providing for remuneration."[114] The court found the plaintiff's pleading deficient because she:

> appears to seek relief for unjust enrichment while also incorporating her breach of contract claim. Specifically, in Paragraph 36 of the Complaint, [plaintiff] "incorporated [the preceding allegations of the Complaint] as if set forth at length herein." One such preceding allegation was [plaintiff's] claim that (1) a contract existed between [plaintiff] and [defendant] and (2) [defendant] breached that contract. This was improper because an unjust enrichment claim must be independent of a breach of contract claim and a Plaintiff may not bring an unjust enrichment claim while also pleading the existence of a contract.[115]

The court then, granted the motion to dismiss the unjust enrichment claim, but did so with leave to amend the complaint to make the unjust enrichment claim independent of the contract claim.[116] As recited above, plaintiffs in this case allege they were entitled to commissions based on a contract between plaintiffs and MLN and that each had contracted with defendants. Like the *Oswell* plaintiff, plaintiffs here specifically incorporate the allegations of an existing contract into their claims for quantum meruit and unjust enrichment.[117]

Plaintiffs again argue that the Federal Rules of Civil Procedure permit alternative

---

[113] *Id.* at *28-*29 (emphasis added).
[114] *Oswell*, 2007 U.S. Dist. LEXIS 44315, at *29.
[115] *Id.* (second alteration in original) (citation omitted).
[116] *Id.* at *29-*30.
[117] D.I. 1 at ¶¶ 44, 48, 70, 74, 96, 100, 122, 126, 148, 152, 174, 178. 200, 204, 226, 230.

pleading and that at this stage of the litigation their quasi-contract claims should not be dismissed. Plaintiffs rely on *RehabCare Group East, Inc. v. Trenton Convalescent Operating Co.*[118] and *In re Prudential Ins. Co. of Am. Sales Practices Litig.*[119] in its opposition to defendants' motion.

In *RehabCare*, the plaintiff asserted claims for, *inter alia*, breach of contract and unjust enrichment.[120] In support of their motion to dismiss, the defendants argued that dismissal of the unjust enrichment claim was warranted because of "inconsistent causes of action, such as breach of contract and unjust enrichment." The court noted that under the Federal Rules of Civil Procedure, a plaintiff may plead inconsistent causes of action. The court stated that "[a]t this nascent stage of the litigation where it is unclear what, if any, contract exists, the Court is loathe to foreclose causes of action that Plaintiff has sufficiently pled, which may or may not be bourne out by discovery."[121]

In *In re Prudential*, the court also denied a motion to dismiss an unjust enrichment claim, stating "the mere existence of a written contract between the parties does not bar an unjust enrichment claim; if the written document is unenforceable, the plaintiff may have an unjust enrichment claim."[122] There, however, the plaintiffs alleged that defendant had "fraudulently induced them to enter purchase contracts which they otherwise would not have entered and that the Court should therefore not enforce them. Taking all facts pleaded in the complaint as true, then, plaintiffs have adequately plead

[118] Civ. No. 06-2128 (AET), 2006 WL 2711496 (D.N.J. Sept. 20, 2006).
[119] 975 F. Supp. 584 (D.N.J. 1996).
[120] 2006 WL 2711496, at *1.
[121] *Id.* at *3 n.1 (citing *In re Prudential*, 975 F. Supp. at 621-22).
[122] 975 F. Supp. at 621-22.

30

a claim for unjust enrichment."[123]  Unlike the plaintiffs in *In re Prudential*, plaintiffs in this case specifically plead the existence of a contract.  The complaint does not allege the contract to have been formed invalidly, rescinded, or voided, and other than citing cases where the existence or validity of a contract was uncertain, plaintiffs do not argue their contracts were invalid.[124]

Courts have recognized the permissibility of alternative pleading and inconsistent claims while nevertheless dismissing under Rule 12(b)(6) quasi-contract claims that relate to the same subject matter as valid contract claims.[125]  However, in light of the early stage of this litigation, and defendants' argument, rejected at this point, that plaintiffs do not have claims under the SRA (the claim in which the existence of a contract is alleged), the court will follow the path set forth in *Oswell* and grant defendants' motion to dismiss plaintiffs' quantum meruit and unjust enrichment claims with leave to amend the complaint to make those claims independent of any contract-based claim.

---

[123] *In re Prudential*, 975 F. Supp. at 622.

[124] The court in *Alin v. American Honda Motor Co., Inc.*, Civ. A. No. 08-4825 (KSH), 2010 WL 1372308, at *16 (D.N.J. Mar. 31, 2010), likewise distinguished *RehabCare* and *In re Prudential* as cases where the validity or existence of a contract was at issue when it dismissed an unjust enrichment claim where the validity of the contract was not at issue.

[125] *See, e.g., U.S. Land Resources, LP v. JDI Realty LLC*, Civ. A. No. 08-5162 (WHW), 2009 WL 2488316, at *12 (D.N.J. Aug. 12, 2009) (listing cases).

31

## IV.    CONCLUSION

For the reasons contained herein, IT IS ORDERED, ADJUDGED and DECREED that:

Defendants' Motion to Dismiss (D.I. 11) is **GRANTED IN PART AND DENIED IN**

**PART**.  On defendants' motion to dismiss plaintiffs' quantum meruit and unjust

enrichment claims, which are the only claims dismissed, plaintiffs are granted leave to

amend the complaint consistent with this memorandum order, which amendment shall

be filed on or before October 15, 2010.

September 24, 2010
Wilmington, Delaware

_____
UNITED STATES MAGISTRATE JUDGE

32