**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MICHAEL MEYERS, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C. A. No. 10-212-MPT |
| | : | |
| MITCHELL L. HEFFERNAN, et al., | : | |
| | : | |
| Defendants, | : | |
| Third-Party Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| STEVE PATTON, et al., | : | |
| | : | |
| Third-Party Defendants. | : | |

**<u>MEMORANDUM</u>**

## I. INTRODUCTION

Presently before the court is a motion to dismiss for lack of personal jurisdiction and improper venue in Delaware, filed by third-party defendants Steven Patton and Paul Impagliazzo. Also before the court are letters briefs filed by third-party defendants and third-party plaintiffs, Mitchell L. Heffernan and James E. Pedrick, addressing the issue of retransfer of this matter to the United States District Court for the District of New Jersey. For the reasons discussed herein, the case will be returned to the United States District Court for the District of New Jersey.

## II. BACKGROUND

On February 5, 2007, Mortgage Lenders Network USA, Inc. ("MLN") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101,

*et seq.*[1]  On February 3, 2009, the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") confirmed the First Amended Plan of Liquidation of Mortgage Lenders Network USA, Inc. under Chapter 11 of the Bankruptcy Code ("Plan").[2]

Michael Meyers, David Rundella, David Bosefski, Scott Kerico, Marc Ambrose, Lisa Macone, Johanna Curley, and Jeffrey DePalma (collectively "plaintiffs") are all residents of New Jersey and were allegedly employed by third-party plaintiffs and MLN in that state.[3]  On February 18, 2010, plaintiffs filed the instant matter originally in the United States District Court for the District of New Jersey against third-party plaintiffs for failure to pay plaintiffs' accrued, unpaid wages.[4]  Plaintiffs assert third-party plaintiffs are principal officers of MLN.[5]

Plaintiffs sued third-party plaintiffs under the New Jersey Wage Payment Law, N.J. Stat. Ann. § 34:11-4.1, *et seq.* ("WPL"), for their unpaid wages and commissions.[6] Because the WPL provides "[f]or purposes of this act the officers of a corporation and any agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation," plaintiffs brought suit directly against third-party plaintiffs, rather than against MLN.[7]

---

[1] *In re Mortg. Lenders Network, USA, Inc.*, Bank. No. 07-10146 PJW, Adv. No. 11-51991 PJW, 2011 WL 4543257, at *1 (Bankr. D. Del. Sept. 28, 2011).
[2] *Id.*
[3] *Id.*
[4] *Id.* (citing *Meyers v. Heffernan*, C.A. No. 10-862 MLC-TJB, 2010 WL 3181031 (D. N.J. Feb. 18, 2010)).
[5] D.I. 64 at 1.
[6] *In re Mortg. Lenders*, 2011 WL 4543257, at *1.
[7] *Id.* (citing N.J. Stat. Ann. § 34:11-4.1(a)).

Additionally, plaintiffs filed proofs of claims in the MLN bankruptcy for their unpaid wages and also participated in a class action against MLN under the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101, *et seq.*[8] Plaintiffs agreed to the treatment of their claims in the confirmed Plan.[9] The WARN Act claims were resolved by a Final Order Approving Settlement Between Debtors, the Committee and the WARN Class Plaintiffs, entered August 6, 2009.[10]

## A.    Transfer To Delaware

On March 15, 2010, the United States District Court for the District of New Jersey issued an order transferring plaintiffs' action to the United States District Court for the District of Delaware, assuming that the case would then be referred to Bankruptcy Court.[11] The New Jersey court concluded *sua sponte* transfer was appropriate because MLN filed for bankruptcy in Delaware, third-party plaintiffs filed appearances in the bankruptcy proceedings, and "[t]he issues in the action before this Court appear to be intertwined with the bankruptcy proceedings in Delaware."[12] Plaintiffs' joint motion requesting the New Jersey court reconsider transfer of the case to Delaware was denied.[13] The case was subsequently transferred to this jurisdiction.[14]

After transfer, third-party plaintiffs filed a motion to dismiss plaintiffs' complaint,[15]

---

[8] *In re Mortg. Lenders*, 2011 WL 4543257, at *1.
[9] *Id.*
[10] *Id.*
[11] *Meyers v. Heffernan*, C.A. No. 10-862 MLC, 2010 WL 1009976, at *1 (D. N.J. Mar. 15, 2010).
[12] *Id.*
[13] *In re Mortg. Lenders*, 2011 WL 4543257, at *2.
[14] *Id.*
[15] D.I. 11.

which was denied and granted in part by this court.[16]  Third-party plaintiffs then filed a

third-party complaint against third-party defendants, former officers of MLN, for

indemnification in the event of a judgment against third-party plaintiffs.[17]  Third-party

plaintiffs asserted third-party defendants managed and hired plaintiffs, and thus, were

liable as plaintiffs' employers.[18]  Third-party defendants filed a FED. R. CIV. P. 12(b)(2)

and (3) motion to dismiss for lack of personal jurisdiction and for improper venue.[19]

Subsequently, this court referred the case to Bankruptcy Court for a determination of

whether the matter was a core or non-core proceeding under 28 U.S.C. § 157.[20]

On September 28, 2011, the Bankruptcy Court issued a memorandum opinion

finding the matter was a non-core proceeding.[21]  Further, the Bankruptcy Court

determined it did not have "related to" jurisdiction,[22] that is, the action was not related to

the bankruptcy proceeding in Delaware.[23]  As such, the referral to Bankruptcy Court was

withdrawn, and the matter was returned to this court.[24]

During a status conference held on February 1, 2012, this court requested letter

briefs from the parties addressing whether the matter should be returned to the District

---

[16] D.I. 27.
[17] D.I. 34.
[18] *Id.* at 9-12, ¶¶ 47, 54.
[19] D.I. 47.  The briefs and supporting documents are found at D.I. 48 (third-party defendants' opening brief with exhibits), D.I. 51 (third-party plaintiffs' response in opposition), D.I. 52 (third-party plaintiffs' memorandum in opposition with exhibits), and D.I. 54 (third-party defendants' reply brief with exhibits).
[20] D.I. 62 at 3.
[21] *In re Mortg. Lenders*, 2011 WL 4543257, at *5.
[22] *Id.* at *6.
[23] *Id.* at *5.
[24] D.I. 64 at 5.

Court of New Jersey.[25]  In their letter brief, third-party plaintiffs contend the case should

be transferred.[26]  Third-party defendants take no position regarding transfer, but

contend that before any transfer occurs, this court should decide their outstanding Rule

12(b)(2) and (3) motion to dismiss for lack of personal jurisdiction and improper venue.[27]

## III. DISCUSSION

### A.  Motion to Dismiss For Lack Of Personal Jurisdiction Pursuant To FED. R. CIV. P. 12(b)(2)

When determining personal jurisdiction, a court must conduct a two-step

analysis.[28]  The court must initially determine "whether the long arm statute of the state

in which the court sits authorizes jurisdiction."[29]  The court then must determine

"whether exercising jurisdiction comports with the requirements of the Due Process

Clause of the Fourteenth Amendment."[30]

The Delaware Long Arm Statute provides:

(c) As to a cause of action brought by any person arising from any of the acts
enumerated in this section, a court may exercise personal jurisdiction over
any nonresident, or a personal representative, who in person or through an
agent:
  (1) Transacts any business or performs any character of work or
  service in the State;
  (2) Contracts to supply services or things in this State;
  (3) Causes tortious injury in the State by an act or omission in this
  State;
  (4) Causes tortious injury in the State or outside of the State by an act
  or omission outside the State if the person regularly does or solicits

---

[25] D.I. 66 at 19, ll. 3-18.

[26] D.I. 69 at 2.

[27] D.I. 68 at 2.

[28] *Kolocotronis v. Dupont Meds*, C.A. No. 02-1426 SLR, 2002 WL 31643025, at
*3 (D. Del. Nov. 20, 2002).

[29] *Id.*

[30] *Id.*

business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.[31]

Sections 3104(c)(1)-(3), (5), and (6) provide for specific jurisdiction, while section 3104(c)(4) provides for general jurisdiction.[32]

In the second prong of the analysis directed to due process concerns, in order to subject a defendant to personal jurisdiction, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[33] A defendant's conduct and connection with the forum state must be such that it should reasonably anticipate or foresee being "haled before a court" in the forum.[34]

A plaintiff can establish the existence of sufficient minimum contacts to support personal jurisdiction over the defendant by producing "sworn affidavits or other competent evidence."[35] Prior to trial, however:

---

[31] 10 *Del. C.* § 3104.

[32] *Tani v. FPL/Next Era Energy*, C.A. No. 10-860 LPS, 2011 WL 4346685, at *5 (D. Del. Sept. 15, 2011) (citing *Padcom, Inc. v. NetMotion Wireless, Inc.*, C.A. No. 03-983 SLR, 2004 WL 1192641, at *4 (D. Del. May 24, 2004)).

[33] *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

[34] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 108-09 (1987).

[35] *Global Recycling Solutions, LLC v. Greenstar N.J., LLC*, C.A. No. 09-976 LPS, 2011 WL 4501165, at *2 (D. Del. Sept. 28, 2011) (citing *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing.  The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary representation by the moving party.[36]

"[W]hen a defendant has both purposefully directed its activities at residents of the forum state and the action arises from, or is directly related to, the defendant's actions within the forum state," there is specific jurisdiction.[37]  When "contacts with the forum state are 'continuous and substantial,'" there is general jurisdiction.[38]  For contact to be continuous and substantial, "the defendant must be engaged in longstanding business in the forum state such as marketing or shipping products, or performing services or maintaining one or more offices there."[39]  Further, while a general presence in Delaware is necessary to assert general jurisdiction, "the contacts of the non-resident (or its agent) need not relate to the instant litigation."[40]

### 1. Delaware Long Arm Statute

The third-party complaint alleges (1) MLN was a Delaware corporation,[41] and (2)

---

[36] *In re EAL (Del.) Corp.*, C.A. No. 93-578 SLR, 1994 WL 828320, at *17 (D. Del. Aug. 3, 1994) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).

[37] *Tani*, 2011 WL 4346685, at *5 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[38] *Tani*, 2011 WL 4346685, at *5 (citing *Merck & Co., Inc. v. Barr Labs., Inc.*, 179 F. Supp. 2d 368, 374 (D. Del. 2002)).

[39] *Tani*, 2011 WL 4346685, at *5 (citing *Kloth v. S. Christian Univ.*, 494 F. Supp. 3d 273, 280 (D. Del. 2007)).

[40] *Eastman Chem. Co. v. AlphaPet Inc.*, C.A. No. 09-971 LPS-CJB, 2011 WL 6004079, at *12 (D. Del. Nov. 4, 2011) (citing *Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 505 (D. Del. 2003)).

[41] D.I. 34 at 2, ¶ 6.

third-party defendants were executive officers, managers, agents, and/or employees of MLN who marketed mortgage loans for MLN throughout the United States including Delaware.[42]  Further, third-party plaintiffs maintain, through the affidavit of Mitchell L. Heffernan, Patton was MLN's Chief Operating Officer at all relevant times and:

> had overall responsibility for MLN's operations including capital markets, pricing and selling loans on the secondary mortgage market, wholesale non-conforming division which included the development, sale and origination of all sub-prime mortgage products and executive management functions for the entire MLN wholesale non-conforming division, which employed commissioned salespersons in 48 states of the United States including . . . Delaware.[43]

The Heffernan affidavit represents Impagliazzo was Senior Vice-President of the Wholesale Non-Conforming Division of MLN, or Patton's second in command of the operations division of MLN, and "was responsible for the entire operations of MLN's Wholesale Non-Conforming Division including loan production, sales, underwriting, loan packages and the development of policy and procedures for the commissioned salespersons of MLN, including the Plaintiffs in this action and commissioned salespersons of MLN employed in the State of Delaware."[44]

Further, Heffernan notes Patton earned an annual salary and quarterly incentives from MLN "which were based on the mortgage loans solicited by the commissioned salespersons working in . . . Delaware from Delaware licensed mortgage brokers."[45]  He maintains Impagliazzo also received an annual salary along with quarterly incentives from MLN also"based on mortgage loans solicited by the commissioned salesperson

---

[42] *Id.* at 3, ¶ 10.
[43] D.I. 52, Ex. D at 3, ¶ 13.
[44] *Id.*, ¶ 16.
[45] *Id.* at 6, ¶ 39.

working in Delaware from Delaware licensed mortgage brokers.'"[46]

Plaintiffs' complaint was incorporated by reference in the third-party complaint. As a result, third-party plaintiffs contend third-party defendants failed to pay plaintiffs' accrued, unpaid wages.[47]

There is specific jurisdiction over third-party defendants under the Delaware Long Arm Statute because they, as nonresidents of Delaware, personally or through an agent, transacted business in Delaware. General jurisdiction exists, as evidenced by the Heffernan affidavit, under § 3104(c)(4) by virtue of their alleged tortious activity, failing to pay wages, outside of Delaware, while they regularly solicited business and derived substantial revenue from services consumed in Delaware.

### 2.    Due Process

Specific jurisdiction over third-party defendants under due process exists because the action arises from, or is directly related to, their purposeful direction of mortgage products at residents of Delaware. There is no suggestion, in the Heffernan affidavit or plaintiffs' complaint, that plaintiffs' unpaid wages and commissions were not based on mortgage products sold in Delaware.

Further, general jurisdiction under due process is warranted over third-party defendants due to their continuous and systemic contacts with Delaware. As evidenced by the Heffernan affidavit, third-party defendants marketed mortgage products and derived substantial revenue in this jurisdiction for a number of years. Because the

---

[46] *Id.* at 5, ¶¶ 35-36.
[47] *In re Mortg. Lenders Network, USA, Inc.*, Bank. No. 07-10146 PJW, Adv. No. 11-51991 PJW, 2011 WL 4543257, at *1 (Bankr. D. Del. Sept. 28, 2011) (citing *Meyers v. Heffernan*, C.A. No. 10-862 MLC-TJB, 2010 WL 3181031 (D. N.J. Feb. 18, 2010)).

Delaware Long Arm Statute authorizes personal jurisdiction, and exercising personal jurisdiction in Delaware comports with the requirements of Due Process, third-party defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction is denied.

**B.    Motion to Dismiss For Improper Venue Pursuant To FED. R. CIV. P. 12(b)(3)**

If a defense of improper venue is raised, the court must apply 28 U.S.C. § 1391.[48]  Under 28 U.S.C. § 1391(b):

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in
> > (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> > (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
> > (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Substantiality exists for venue purposes under 28 U.S.C. § 1391(b)(2) when "material acts or omissions within the forum bear a close nexus to the claims."[49] According to the Heffernan affidavit, third-party defendants, as executives of MLN, were responsible for the unpaid wages of plaintiffs.[50]  Again, there is no suggestion that plaintiffs' unpaid wages and commissions were not based on mortgage products sold in Delaware.  Thus, "a substantial part of the events or omissions giving rise to the claim occurred" in Delaware.  As such, third-party defendants' motion to dismiss pursuant to

---

[48] *RAIT P'ship, L.P. v. Fieldstone Lester Shear & Denberg, LLP*, C.A. No. 09-28 GMS-MPT, 2009 WL 3297310, at *5 (D. Del. Oct. 14, 2009).
[49] *Traynor v. Liu*, 495 F. Supp. 2d 444, 451 (D. Del. 2007).
[50] D.I. 52, Ex. D at 3-6, ¶¶ 11, 16, 45.

FED. R. CIV. P. 12(b)(3) for improper venue is denied.

**C. Transfer**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." While there is no definitive list of factors to consider, there are potential factors (the "*Jumara* factors") characterized as private or public interests.[51]

The private interests include:

(1) plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).[52]

The public interests include:

(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.[53]

A balance of these factors must "strongly" favor a transfer.[54]

---

[51] *Media Grp., Inc. v. Turtle Wax, Inc.*, C.A. No. 96-234 MMS, 1996 WL 756760, at *3 (D. Del. Dec. 23, 1996) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)).

[52] *Id.*

[53] *Medicis Pharm. Corp. v. Nycomed U.S. Inc.*, C.A. No. 10-1099 SLR, 2011 WL 2457598, at *3 (D. Del. June 16, 2011) (citing *Jumara*, 55 F.3d at 879-80).

[54] *CNH Am. LLC v. Kinzenbaw*, C.A. No. 08-945 GMS, 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009).

A court's authority to transfer cases pursuant to 28 U.S.C. § 1404(a) does not depend upon a motion, stipulation, or consent of parties to the litigation, but "[f]ailure to afford parties adequate notice and opportunity to be heard on a district judge's contemplated *sua sponte* transfer would in most, if not all, cases violate the parties' due process rights."[55]  In the instant matter, the parties' positions on transfer were sought by the court.

### 1.    This Action Could Be Brought In New Jersey

When deciding whether transfer is appropriate, the court must first determine whether the "action could have been brought in the proposed transferee venue."[56] Here, the proposed transferee venue is New Jersey.[57]  A district or division is one where an action could have been brought "if that district has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue."[58]

### a.    Support for Diversity Jurisdiction in the New Jersey Court

Under 28 U.S.C. § 1332(a), district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive

---

[55] *Dish Network Corp. v. TiVo, Inc.*, 604 F. Supp. 2d 719, 725 (D. Del. 2009) (quoting *Clopay Corp. v. Newell Cos., Inc.*, 527 F. Supp. 733, 737-38 (D. Del. 1981)).

[56] *Intellectual Ventures I LLC v. Altera Corp.*, C.A. No. 10-1065 LPS, 2012 WL 297720, at *3 (D. Del. Jan. 24, 2012); *Human Genome Scis., Inc. v. Genentech, Inc.*, C.A. Nos. 11-082 LPS, 11-156 LPS, 11-328 LPS, 2011 WL 2911797, at *3-5 (D. Del. July 18, 2011).

[57] D.I. 66 at 19, ll. 3-18.

[58] *Mekiki Co., Ltd. v. Facebook, Inc.*, C.A. No. 09-745 JAP, 2010 WL 2348749, at *2 (D. Del. June 7, 2010) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)).

of interest and costs, and is between citizens of different states.[59]  Plaintiffs are

residents of New Jersey.[60]  Third-party plaintiffs are residents of Connecticut.[61]  Patton

is a resident of California.[62]  Impagliazzo is a resident of New York.[63]  In their complaint,

plaintiffs allege the amount in controversy, exclusive of interest and costs, exceeds

$75,000.[64]  Plaintiffs' complaint was incorporated by reference in third-party plaintiffs'

complaint.[65]  Third-party plaintiffs thereby allege New Jersey has diversity jurisdiction

over third-party defendants.[66]  Since the elements of 28 U.S.C. § 1332(a) are met, these

factors support diversity jurisdiction over all parties in New Jersey.

> **b.    Support for Personal Jurisdiction in the New Jersey
> Court under the Sales Representatives' Rights Act**

Plaintiffs' complaint relies on a New Jersey statute,[67] the Sales Representatives'

Rights Act ("SRRA"), N.J. Stat. Ann. § 2A:61-A, *et.seq.*, that was incorporated in third-

party plaintiffs' complaint.[68]  Third-party plaintiffs thereby contend the SRRA provides

personal jurisdiction over third-party defendants by virtue of their roles as Chief

Operating Officer of MLN and Senior Vice-President of the Wholesale Non-Conforming

Division of MLN.[69]  Pursuant to the SRRA, "[a] principal who is not a resident of this

---

[59] *Int'l Bus. Software Solutions, Inc. v. Sale Labs Tech., AG*, 440 F. Supp. 2d 357, 361-62 (D. N.J. 2006).
[60] D.I. 1 at 1-2, ¶¶ 2-9.
[61] D.I. 34 at 2, ¶¶ 2-3; D.I. 52, Ex. D at 2, ¶ 1.
[62] D.I. 48, Ex. 1 at 1, ¶ 2.
[63] *Id.*, Ex. 2 at 1, ¶ 2.
[64] D.I. 1 at 2, ¶ 14.
[65] D.I. 34 at 3, ¶ 13.
[66] D.I. 69 at 2.
[67] D.I. 1 at 1, ¶ 1.
[68] D.I. 34 at 3, ¶ 13.
[69] D.I. 1 at 1, ¶ 1.

State who contracts with a sales representative to solicit orders in this State is declared to be doing business in this State for purposes of the exercise of personal jurisdiction."[70]

Further, a principal is defined as:

> a person, *including* a person who does not have a permanent or fixed place of business in this State, who manufactures, produces, imports or distributes a product or offers a service; contracts with an independent sales company or other person to solicit orders for the product or services; and compensates those companies or other persons who solicit orders, in whole or in part, by commission.[71]

Thus, the SRRA provides a statutory basis for personal jurisdiction over third-party defendants in New Jersey.

In their motion to dismiss and letter brief, third-party defendants deny this court has personal jurisdiction over them.[72] Further, they preserve "jurisdictional defenses" should this matter be transferred to the District Court of New Jersey.[73]

To overcome a motion to dismiss for lack of personal jurisdiction, a non-moving party, whose proof is limited to pleadings and/or affidavits, meets the burden of pleading and persuasion if these written materials are sufficient to support a finding of personal jurisdiction, notwithstanding any contrary representation by the moving party.[74]

As noted previously, Patton is a resident of California,[75] and Impagliazzo a resident of New York.[76]  According to the third-party complaint, MLN was a Delaware

---

[70] N.J. Stat. Ann. § 2A:61A-5.
[71] N.J. Stat. Ann. § 2A:61A-1 (emphasis added).
[72] D.I. 48 at 6; D.I. 68 at 2.
[73] D.I. 68 at 3.
[74] *LaRose v. Sponco Mfg. Inc.*, 712 F. Supp. 455, 458-59 (D. N.J. 1989) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).
[75] D.I. 48, Ex. 1 at 1, ¶ 2.
[76] *Id.*, Ex. 2 at 1, ¶ 2.

corporation,[77] which employed third-party defendants as executive officers, managers, and/or agents responsble for marketing mortgage loans throughout the United States including New Jersey.[78]

Further, third-party plaintiffs, relying on the Heffernan affidavit, attribute the same responsibilities to Patton as MLN's Chief Operating Officer in New Jersey, as they do for Delaware.  They also claim, pointing to the Heffernan affidavit, that Impagliazzo, as Senior Vice-President of the Wholesale Non-Conforming Division of MLN, or Patton's second in command of the operations division of MLN, had like responsibilities over the entire loan operations, including the development of policies and procedures for commissioned salespersons in New Jersey, as he did in Delaware.[79]

Additionally, the Heffernan affidavit notes Patton earned an annual salary from MLN with quarterly incentives "which were based in part on the mortgage loans solicited by the commissioned salespersons working in New Jersey from New Jersey licensed mortgage brokers."[80]  Similarly, Impagliazzo's annual salary of $275,000 and quarterly incentives of $231,250 from MLN were based on mortgage loans solicited by commissioned New Jersey salespersons from New Jersey licensed mortgage brokers.[81]

Thus, third-party defendants, who are residents of California and New York, are principals because they offered mortgage products; contracted with sales representatives and commissioned salespersons to solicit orders for MLN mortgage

---

[77] D.I. 34 at 2, ¶ 6.
[78] *Id.* at 3, ¶ 10.
[79] D.I. 52, Ex. D at 3-4, ¶¶ 13, 15, 16, 19, 23.
[80] *Id.* at 6, ¶ 38.
[81] *Id.* at 5, ¶ 34, 36.

products in New Jersey; and compensated the sales staff in whole or in part by commissions.  As such, pursuant to the SRRA, there is support for personal jurisdiction over third-party defendants in New Jersey.

### c.    There Is Support for Personal Jurisdiction in the New Jersey Court

As noted previously herein, analysis of personal jurisdiction involves the two-step determination of whether the long arm statute of the state in which the court sits authorizes jurisdiction, and whether exercising jurisdiction comports with the requirements of Due Process.[82]

The New Jersey Long Arm Statute, N.J. Ct. R. 4:4-4, provides for personal jurisdiction over non-resident defendants to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment.[83]  A party with constitutionally sufficient minimum contacts with New Jersey is subject to suit in that state.[84]

The central inquiry under due process is whether the defendant has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."[85]  The level of minimum contacts necessary to assert personal jurisdiction depends upon "the nature of the interactions

---

[82] *Jakks Pac., Inc. v. Conte,* C.A. No. 11-479 ES, 2011 WL 6934856, at *2 (D. N.J. Dec. 30, 2011).
[83] *AstraZeneca Pharm. LP v. Intellipharmaceutics Corp.*, C.A. 11-2973 JAP, 2012 WL 525963, at *2 (D. N.J. Feb. 15, 2012).
[84] *Colvin v. Van Wormer Resorts, Inc.*, 417 F. App'x 183, 186 (3d Cir. 2011) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004)).
[85] *Jakks*, 2011 WL 6934856, at *2 (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).

and the type of jurisdiction asserted."[86]  If a defendant has both purposefully directed its activities at residents of the forum state and the action arises from, or is directly related to, the defendant's actions within the forum state, there is specific jurisdiction.[87]  When contacts with the forum state are continuous and substantial, there is general jurisdiction.[88]

Evidence supporting specific jurisdiction over third-party defendants in New Jersey is contained in the Heffernan affidavit, specifically, as executives of MLN, they were responsible for the unpaid wages of plaintiffs, who, as residents of New Jersey, solicited licensed mortgage brokers of that state to use the mortgage products offered by MLN.[89]  Additionally, the Heffernan affidavit supports general jurisdiction over third-party defendants because, as executives of MLN, they were engaged in a business for a number of years which offered mortgage products in New Jersey.[90]

### d.    There Is Support for Venue in the New Jersey Court

Under 28 U.S.C. § 1391(b):

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in
> > (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> > (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
> > (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

---

[86] *AstraZeneca*, 2012 WL 525963, at *2 (quoting *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006)).
[87] *Id.*
[88] *Id.*
[89] D.I. 52, Ex. D at 3-6, ¶¶ 9, 11, 16, 45.
[90] *Id.* at 3-4, ¶¶ 13, 15, 16, 19, 23.

In the case at hand, a substantial part of the events or omissions giving rise to the claim occurred in New Jersey. As previously noted, in the Heffernan affidavit and plaintiffs' complaint, third-party defendants, as executives of MLN, were responsible for the failure to pay plaintiffs' wages. Further, plaintiffs were employed by third-party defendants and MLN in New Jersey, and as commissioned salespersons, solicited use of the MLN mortgage products in New Jersey. Thus, there is support for venue in New Jersey.

### 2.    The *Jumara* Factors Support Transfer to the New Jersey Court

### a.    Private Interest Factors

The first factor considered is the "plaintiff's forum preference as manifested in the original choice."[91]  A plaintiff's choice of forum is a "paramount" consideration.[92] Typically, courts "defer to a plaintiff's choice of forum."[93]  This deference applies "as long as a plaintiff has selected the forum for some legitimate reason."[94]

Third-party plaintiffs consented to jurisdiction in Delaware by filing a third-party action only after the case was transferred from New Jersey for determination of whether the matter was a core proceeding.[95]  After the Bankruptcy Court decision, the matter was returned to this court, which directed the parties to address whether the matter

---

[91] *Media Grp., Inc. v. Turtle Wax, Inc.*, C.A. No. 96-234 MMS, 1996 WL 756760, at *3 (D. Del. Dec. 23, 1996) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)).
[92] *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).
[93] *Jumara*, 55 F.3d at 880.
[94] *Cypress Semiconductor Corp. And Int'l Microcircuits, Inc. v. Integrated Circuit Sys., Inc.*, C.A. No. 01-199 SLR, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001).
[95] D.I. 64 at 1-2 (citing D.I. 25; *Meyers*, 2010 WL 1009976, at *1).  Neither plaintiffs nor third-party plaintiffs moved for transfer from New Jersey to Delaware.

should be retransferred to the District Court of New Jersey.  In their letter brief, third-party plaintiffs submit the matter should be returned to New Jersey.

Notwithstanding the unique circumstances of this case, a party manifests its forum preference by filing a complaint in that forum.[96]  Here, third-party plaintiffs filed their complaint against third-party defendants in Delaware.[97]  Thus, this factor weighs against transfer.

The next factor is "the defendant's preference."[98]  Third-party defendants do not set forth a forum preference as they contest jurisdiction in Delaware and preserve their jurisdictional defenses upon transfer.  This factor is neutral.

Next, the court considers "whether the claim arose elsewhere."[99]  When "there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."[100]  Here, as previously noted, in the Heffernan affidavit and plaintiffs' complaint, third-party defendants, as executives of MLN, were responsible for the failure to pay plaintiffs' wages.  Further, plaintiffs were employed by third-party plaintiffs and MLN in New Jersey,[101] and as commissioned salespersons, solicited use of the MLN mortgage products in New Jersey.[102]  This factor weighs in favor of transfer.

---

[96] *Am. Institutional Partners, LLC v. Fairstar Res. LTD.*, C.A. No. 10-489 LPS, 2011 WL 1230074, at *14 (D. Del. Mar. 31, 2011).
[97] D.I. 34.
[98] *Media Grp.*, 1996 WL 756760, at *3.
[99] *Id.*
[100] *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).
[101] *In re Mortg. Lenders Network, USA, Inc.*, Bank. No. 07-10146 PJW, Adv. No. 11-51991 PJW, 2011 WL 4543257, at *1 (Bankr. D. Del. Sept. 28, 2011); D.I. 1 at 1-2, ¶¶ 2-9.
[102] D.I. 52, Ex. D. at 3, ¶ 9.

The next factor considered is "the convenience of the parties as indicated by their relative physical and financial condition."[103]  Although some of the parties are citizens of Connecticut, California, and New York, making them travel to New Jersey, as opposed to Delaware, would not unduly inconvenience them.[104]  This factor weighs in favor of transfer.

Under the factor "the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora,"[105] there is no suggestion that witnesses may actually be unavailable for trial in Delaware or New Jersey.  This factor is neutral.

In considering "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum),"[106] this court recognized that "recent technological advances have reduced the weight of this factor to virtually nothing."[107]  Further, there is no suggestion that books and records could not be produced in New Jersey.  This factor is neutral.

### b.    Public Interest Factors

The court first considers "the enforceability of the judgment."[108]  There is no suggestion that a judgment would be unenforceable in either Delaware or New Jersey.  This factor is neutral.

---

[103] *Media Grp.*, 1996 WL 756760, at *3.
[104] *Bosco v. Scott*, C.A. No. 00-211 GMS, 2000 WL 1728150, at *4 (D. Del. Aug. 31, 2000).
[105] *Media Grp.*, 1996 WL 756760, at *3.
[106] *Id.*
[107] *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 209 (D. Del. 1998).
[108] *Medicis Pharm. Corp. v. Nycomed U.S. Inc.*, C.A. No. 10-1099 SLR, 2011 WL 2457598, at *3 (D. Del. June 16, 2011) (citing *Jumara*, 55 F.3d at 879-80).

Next, the court takes into account "practical considerations that could make the trial easy, expeditious, or inexpensive."[109]  There are no practical considerations identified addressing this issue.  This factor is neutral.

The next factor is "the relative administrative difficulty in the two fora resulting from court congestion."[110]  There is no suggestion of administrative difficulty resulting from court congestion which weighs in favor of one forum over the other.  This factor is neutral.

"[T]he local interest in deciding local controversies at home" is the next element.[111]  Plaintiffs sued third-party plaintiffs under the New Jersey WPL for their unpaid wages and commissions.  Plaintiffs' complaint was incorporated by reference in third-party plaintiffs' complaint.  New Jersey has an interest in deciding this case because it "has an interest in claims arising under the [WPL]."[112]  This factor weighs in favor of transfer.

The next factor analyzed is "the public policies of the fora."[113]  No public policy concerns were raised regarding transfer of this case.  This factor is neutral.

The court also considers "the familiarity of the trial judge with the applicable state law in diversity cases."[114]  Relied on in the complaint are two New Jersey statutes: the WPL and SRRA.  The District of New Jersey would likely be more familiar with New

---

[109] *Id.*
[110] *Id.*
[111] *Id.*
[112] *Ebid v. Global Futures & Forex, Ltd.*, C.A. No. 10-4372 AET, 2010 WL 4853292, at *6 (D. N.J. Nov. 22, 2010).
[113] *Medicis*, 2011 WL 2457598, at *3.
[114] *Id.*

Jersey law than this court.  This factor weighs in favor of transfer.

### c.  The *Jumara* Factors Favor Transfer

Overall, the following interests weigh in favor of transfer: whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the local interest in deciding local controversies at home, and the familiarity of the trial judge with the applicable state law in diversity cases.  Third-party plaintiffs' forum preference, as manifested by the filing of their complaint, weighs against transfer.  All other factors are neutral.

Although third-party plaintiffs' forum preference is a paramount consideration,[115] this lone factor does not prevent transfer of this matter,[116] particularly when the other factors strongly weigh in favor of transfer.  The claims arose in New Jersey, that jurisdiction has an interest in claims arising under the WPL, and the District Court of New Jersey would likely be more familiar with New Jersey law than this court.

Further, third-party plaintiffs initiated their action against third-party defendants in Delaware only after the case was transferred from New Jersey to address the issue of a core/non-core proceeding.  There is no indication that third-party plaintiffs would not have filed their complaint against third-party defendants in New Jersey had this matter not been transferred.

On the whole, the balance of convenience and the interest of justice weigh strongly in favor of transfer.  Further, this action could have been brought in the District of New Jersey.  As such, the instant matter should be transferred to the United States

---

[115] *Shutte*, 431 F.2d at 25.
[116] *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223-25 (Fed. Cir. 2011).

District Court for the District of New Jersey, under 28 U.S.C. § 1404(a).

**IV. CONCLUSION**

For the reasons contained herein, this matter should be transferred to the United States District Court for the District of New Jersey.